UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN GUNNISON,<br>Plaintiff,<br>v.<br>INGERSOLL RAND RETIREMENT SAVINGS PLAN et al.,<br>Defendants. | No. 2:26-cv-0972 TLN AC PS<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in pro se in this action brought under the Employee Retirement Income Security Act ("ERISA"). The case was accordingly referred to the undersigned for pretrial matters by E.D. Cal. R. ("Local Rule") 302(c)(21). Defendants filed a motion to dismiss for failure to timely exhaust remedies as required by the Plan. ECF No. 17. Plaintiff filed an opposition, ECF No. 18, and defendants replied, ECF No. 21. The matter was heard on August 12, 2026. ECF No. 23. Having fully considered the briefs and the arguments of the parties at hearing, the undersigned recommends that the motion be granted.

## I. Background

A. Allegations of the Complaint

Plaintiff brings suit against Ingersoll Rand Retirement Savings Plan (the Plan) and Ingersoll Rand Benefits Committee (the Plan Administrator). The complaint alleges that plaintiff

was enrolled in the Plan. ECF No. 1 at 1. Members contributed to the Plan via payroll deductions, with employer matching contributions of up to 6% of the member's total gross pay. Id. Plaintiff had an elective retirement contribution in effect when the current Plan became effective. Around April 2021, however, plaintiff's payroll contribution rate was inexplicably changed to 0% without him requesting a change and without any notification to him. Id. Fidelity Investments, meanwhile, showed on their retirement account portal that plaintiff was still contributing 10% of his gross pay. Id. Defendants would later confirm that plaintiff's account was the only one with this discrepancy, and they could not explain why. Id.

Defendants discovered the discrepancy no later than March 2023, but failed to correct it or notify plaintiff about it at that time. Id.

In April 2024, defendants sent plaintiff notice that the contribution election record on his Fidelity account had been updated to reflect his actual contribution rate. Id. at 1, 13. The letter did not state what this actual contribution rate was, and it included the sentence "No action is required." Id. at 1, 13. Plaintiff relied on this sentence and took no further action. Id. at 1.

The complaint does not specify when or how plaintiff discovered that retirement contributions had not been deducted from his paychecks since April 2021, but it does allege that defendants acknowledged the payroll error in September 2025 and refused to make full corrective contributions. Id. at 2. Plaintiff alleges he submitted a written "ERISA appeal" to the Plan Administrator on October 6, 2025, "expressly appealing the September 22, 2025 denial of his claim for missed retirement contributions and lost earnings under the Plan." Id. The Plan wrongfully took the position that plaintiff's time to file an administrative claim had expired in July 2024, 90 days after the April 2024 letter. Id. The federal complaint, filed on March 18, 2026, seeks recovery of all unpaid benefits, including corrective contributions, earnings, gains, prejudgment interest, and costs of suit. Id.

B. Attachments to the Complaint

The attachments to the complaint provide additional detail. The April 2024 notice stated, in full:

////

> **Important Notice Regarding Your Pre-Tax and/or Roth Deferral Contribution**
>
> Dear Ingersoll Rand Retirement Savings Plan ("RSP") Participant:
>
> During a recent periodic review of Ingersoll Rand's payroll records, we identified a discrepancy in the pre-tax and/or Roth deferral contributions you have actually made to the RSP and your pre-tax and/or Roth deferral elections on file with the Fidelity Service Center. To address this discrepancy, we have adjusted your deferral election record in Fidelity to match the actual deductions that are being taken through payroll. No action is required. Contributions that you have made on your paychecks have been deposited into your account and company match applied as normal.
>
> To review and make a change to your deferral elections at any time, please contact the Fidelity Service Center at 1-800-835-5095 or access your online account at NetBenefits (www.401k.com). Please allow 1-2 payroll cycles for any future changes to take effect.
>
> Sincerely,
>
> Ingersoll Rand Retirement

ECF No. 1 at 13.

On September 5, 2025, plaintiff received an email from Plan manager Jason Roberts, presumably in response to an inquiry, which reads in pertinent part as follows:

> We undertook a research project to find any correspondence or work done by the Benefits team over the past 4 years. We located an email correspondence from March 13-14, 2023 between the Benefits team and the Payroll team. The benefits team had run a comparison in 401(k) contribution elections between Fidelity's system and ADP, the payroll processing system at that time. Out of approximately 5,000 employees, your record was the only discrepancy – Fidelity showed 10% pre-tax, while ADP showed 0%. The benefits team asked the Payroll team if there was an explanation for the discrepancy. We did not receive an explanation, but no further action was taken at that time, until a subsequent comparison was run, resulting in the April 2024 letter to you.
>
> Given that we do not have an explanation for why the contribution rate was set to 0% in the payroll system, a one-time company contribution will be made to your account. This contribution reflects 100% of missed company match and 50% of missed employee pre-tax contribution for paychecks from 4/23/2021 through 4/8/2022. At that point, you would have reviewed your 2021 Form W-2 showing the lower contributions in order to complete your taxes….

Id. at 15.

Plaintiff responded with an email demanding to be made entirely whole for all missed

contributions through July 14, 2025. Id. at 20. On September 22, 2025, counsel for the Plan denied the demand in writing. Id. at 27-29. Counsel noted that the 90-day period to file a formal claim for benefits had expired in July of 2024, 90 days after the April 2024 notification. Id. at 29. On October 6, 2025, plaintiff submitted to the Plan what he captioned as an ERISA appeal. Id. at 31-32. In a letter dated November 6, 2025, counsel for the Plan denied that demand and repeated that the time to file a formal claim for benefits under the Plan had expired in July 2024. Id. at 34-36.

C. The Motion to Dismiss

Defendants' motion to dismiss is based solely on plaintiff's failure to timely file a claim contesting the adjustment of his contribution rate to 0%. ECF No. 17 at 14, 16. Defendants contend that the applicable 90-day deadline to file a claim, pursuant to the Plan, ran from the April 2024 letter notifying plaintiff that there had been a discrepancy between Fidelity's reporting of his contributions and the actual payroll deductions taken. Defendants argue that this letter put plaintiff on notice that the contribution rate reported by Fidelity had been inaccurate.

In opposition, plaintiff argues that because the April 2024 letter stated no action was required on his part, it did not trigger any obligation to inquire further. The letter itself did not communicate any adverse benefit determination. Plaintiff explains that he investigated once the issue became clear to him in 2025, and that his September 2025 demand should be considered a timely administrative claim. ECF No. 18.

## II. Analysis

A. Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a complaint under this standard, the court "must accept as true all of the factual allegations contained in the complaint," construe those allegations in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. See

Erickson v. Pardus, 551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of factual allegations, or allegations that contradict matters properly subject to judicial notice. See Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. See Fed. R. Civ. P. 15(a); Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied ... if amendment would be futile." Carrico v. City & County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011).

B. ERISA' Exhaustion Requirement

An ERISA plaintiff claiming a denial of benefits "must avail himself or herself of a plan's own internal review procedures before bringing suit in federal court." Diaz v. United Agric. Emp. Welfare Benefit Plan & Tr., 50 F.3d 1478, 1483 (9th Cir. 1995); see also Vaught v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 626 (9th Cir. 2008). This requirement allows the plan to make a full and fair decision on the claim and conserves judicial resources. See Mack v. Kuckenmeister, 619 F.3d 1010, 1020 (9th Cir. 2010) (quoting Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980)). While exhaustion is not a jurisdictional requirement, see Vaught, 546 F.3d at 626 n.2, "[a]s a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court," Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc., 770 F.3d 1282, 1298 (9th Cir. 2014).

Because these plans are contracts between the plan administrator and members, whether a plaintiff followed the specified claim and appeal procedures is a matter of contract interpretation.

Harlick v. Blue Shield of Cal., 686 F.3d 699, 708 (9th Cir. 2012); Dragu v. Motion Picture Indus. Health Plan, 144 F. Supp. 3d 1097, 1112 (N.D. Cal. 2015). Courts have further held that the plan administrator's interpretation of the contract, in that regard, is reviewed only for abuse of discretion. Conkright v. Frommert, 559 U.S. 506, 521 (2010); Howard W. v. Providence Health Plan, 652 F. Supp. 3d 1293, 1307-08 (W.D. Wash. 2023).

Here, the Plan provides that members may file a written claim

> no later than ninety (90) days after the date the payment which forms the basis of the Claim should have been made according to the terms of this Plan, or with respect to clarification of rights to future benefits, within ninety (90) days of the date the Claimant knew (*or acting with reasonable care, should have known*) of the circumstances requiring clarification.

ECF No. 1 at 7 (Ingersoll Rand Retirement Savings Plan, § 12.4(b)) (emphasis added). Plaintiff does not dispute that this term governs, and he has attached it to his complaint. Id.

C. Plaintiff Failed to Timely File a Claim

The question presented by the motion is whether plaintiff should have known in April 2024, in light of the written notice he received and his duty of reasonable care, that retirement contributions were not being deducted from his paycheck. If so, the notice triggered plaintiff's 90-day window to file a written claim pursuant to the Plan, and this lawsuit is barred for failure to file a timely claim. Because all pertinent facts are established on the face of the complaint and its attachments, the question is suitable for resolution on a motion to dismiss. See Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court may consider allegations contained in the pleadings, exhibits attached to the complaint, and matters subject to judicial notice).

The April 2024 notice plainly informed plaintiff that there was a "discrepancy" between "the pre-tax and/or Roth deferral contributions you have actually made to the [Plan] and your pre-tax and/or Roth deferral elections on file with the Fidelity Service Center." ECF No. 1 at 13. In other words, plaintiff was told that the information available through Fidelity—the information he affirmatively alleges that he relied on—was inaccurate, and that payroll deductions had not in fact been made in accordance with the election on file with Fidelity. The notice further specified that

the Plan had resolved the discrepancy by "adjust[ing] your deferral election record in Fidelity to match the actual deductions that are being taken through payroll" and not the other way around. Id.

Plaintiff emphasizes that the notice told him that no action was necessary on his part, but taken in context that statement can only be understood as meaning that no action on plaintiff's part was necessary in order to correct the Fidelity account information to match the deductions actually being taken as retirement contributions. The statement cannot reasonably be interpreted to mean that plaintiff was absolved of any responsibility for ensuring that his elections were as he wished them to be. To the contrary, the notice went on to provide information about how plaintiff could view and adjust his election. A reasonably prudent person, having been told that the election information he had relied on was incorrect and had been changed, would have followed up to learn what deductions were actually being taken out of his pay and contributed to the Plan. Plaintiff acknowledges that he did not do so.

The undersigned is troubled that the notice plaintiff received in April 2024 did not explicitly alert him that *no* retirement contributions had been made since 2021. The generic language of the notice might make sense if this was a form notice going out to numerous employees who had all been the unfortunate subjects of a payroll glitch. But plaintiff was the only employee discovered to have a discrepancy between Fidelity's record of the election and the deductions being taken. Accordingly, a notice tailored to his unique situation would have been appropriate. Moreover, the notice stated that "[c]ontributions that you have made on your paychecks have been deposited into your account and company match applied as normal," ECF No. 1 at 13, which misleadingly implied that *some* contributions had been made during the relevant period. Nonetheless, the notice did inform plaintiff that contributions had not been made at the rate he believed he had elected. A reasonable person receiving that information would have gone online or picked up the phone to find out whether the actual contributions being made were only slightly different from what the employee intended, or dramatically less than intended—or, as plaintiff could have learned in 2024 through reasonable diligence—not being made at all.

Defendants also argue that plaintiff should have known well before receipt of the April

2024 notice that retirement contributions were not coming out of his paycheck. Regular pay stubs identify deductions, and annual W-2 forms specifically identify tax-deferred retirement contributions such as those at issue here. Plaintiff's apparent failure to have reviewed these documents between 2021 and 2025 does not mean that he lacked notice that no contributions were being made. In any event, April 2024 is the latest time at which plaintiff, "acting with reasonable care, should have known" that he had not been contributing to the Plan.

Plaintiff argues that the notice issue involves disputed issues of fact and is not appropriate for resolution on a motion to dismiss. ECF No. 18 at 3. However, all relevant documents have been submitted by plaintiff himself and are incorporated by reference into the complaint. The court is deciding the motion on the basis of plaintiff's allegations, taken as true. Furthermore, the reasonableness inquiry is an objective one. At hearing on the motion, plaintiff explained that during the relevant time period he was experiencing personal challenges that affected his diligence and attention to detail. The court is sympathetic to plaintiff's personal circumstances, but they are not relevant to the legal question whether the 2024 notice triggered a duty of reasonable inquiry.

It is apparent from the face of the complaint and its attachments that plaintiff did not file a timely administrative claim under the terms of the Plan. Accordingly, the motion to dismiss should be granted.

**III. Leave to Amend Is Not Appropriate**

Courts should grant leave to amend unless it is clear such leave would be futile. See Fed. R. Civ. P. 15(a); Manzarek, 519 F.3d at 1031; Carrico, 656 F.3d at 1008. This includes when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber, 806 F.2d at 1401. In other words, leave to amend should be denied if "the plaintiff could not amend the complaint to state a viable claim without contradicting the complaint's original allegations." B&G Foods N. Am., Inc. v. Embry, 638 F. Supp. 3d 1122, 1134 (E.D. Cal. 2022). Here the complaint's fatal defect could not be cured by amendment without contradicting the original allegations. Leave to amend would therefore be futile and should be denied.

## IV. Pro Se Plaintiff's Summary

The magistrate judge is recommending that your case be dismissed, because your 90-day window under the Plan to file a written claim ran from the April 2024 notice. It was not reasonable of you to interpret "no actioned needed" as an assurance that retirement contributions were being made as you expected. To the contrary, the notice informed you that the Fidelity information about your election was inaccurate, and that your retirement contributions had not been what you thought. Had you acted with "reasonable care" by following up, you would have learned that no contributions were being made. Life circumstances that may have understandably affected your attention to detail about your finances are, unfortunately, not relevant to the question what a "reasonable" person would have done. Because you did not raise the issue with the Plan until 2025, well after your time to submit a claim had passed, this lawsuit is barred.

## V. Conclusion

Accordingly, **IT IS HEREBY RECOMMENDED** that (1) The motion to dismiss (ECF No. 17) be GRANTED without leave to amend; and (2) the Clerk of the Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991). **Due to exigencies of the court's calendar, extensions of time to object are**

////

////

////

**disfavored. The parties are informed that objections need only identify the portion of the Findings and Recommendations to which objection is made. Briefing is not required.**

DATED: August 26, 2026

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE